UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-21635-CIV-HUCK/O'SULLIVAN

U.S. DISTRIBUTORS, INC. a Florida
corporation,

           Plaintiff,

vs.

JOHN P. BLOCK, an individual,

           Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

      This matter came before the Court on Defendant John P. Block's Motion to Dismiss (D.E. #3). The Court has reviewed the motion and responses, the record, and is otherwise duly advised in the premises. For the reasons set forth below, the motion is denied.

    **I.**    **Factual and Procedural Background**

        **A.**    **The Complaint**

      The complaint consists of two counts: Count I is for breach of contract, and Count II seeks a declaratory judgment. The Plaintiff alleges that it contracted with the Defendant for the "purchase and sale of certain aircraft parts" that "were and are being stored within a facility located in St. Augustine, Florida." Compl. at ¶¶ 4-5.

      According to the complaint, the Defendant agreed to pay the Plaintiff $150,000 for the parts by September 1, 2008. *Id.* at ¶ 7. In addition, the Defendant agreed to pay $6,300 in rent per month from September 2008 for the facility at which the parts were stored. *Id.* at ¶ 8. The Defendant also agreed to transfer title to several vehicles and pay all transportation costs related with transporting the vehicles to the Plaintiff's principal in Maine.[1] *Id.* at ¶ 10.

---

[1]     There appears to be a typographical error in the complaint: ¶ 10 alleges that the Defendant agreed to pay the transportation costs associated with moving the vehicles to the Defendant's principal in Maine; ¶ 11 alleges that the Defendant partially performed by transporting the vehicles to the Plaintiff's principal. The Court considers that the parties' intention was that the

The complaint alleges that the Defendant partially performed his obligations by paying $50,000 of the purchase price, transporting two vehicles to the Plaintiff's principal,[2] and making late payment of rent on the facility for the months of September and October, 2008. *Id.* at ¶ 11. Since these payments, the Plaintiff has received no further payments. *Id.* at ¶ 12.

To establish the terms and as evidence of the contract, the Plaintiff relies on various e-mails attached to the complaint, the Defendant's partial payments, and the Plaintiff's efforts to bring the Defendant into compliance with the contract. *Id.* at ¶ 17. These e-mails include statements as follows:

1.  "On the issue of the parts...I need to make preparations to move them as soon as I get back. . . . I am considering moving the parts to a hanger that I can rent at a reasonable price in Sherman, Texas...at the former Perin AFB." *E-mail from the Defendant to Roger Nair dated September 24, 2008, and forwarded to Karen Confalone on September 29, 2008.*

2.  "So far, I have already wired (from the states...before my departure) the following payments: 1) $4150 (or so) for the transport of the equipment from Tallahassee to Maine. This payment should have landed in your Wachovia account. 2) $6300 for last month's rent for the parts warehouse in St. Augustine. This was wired to an Orlando bank that was listed as the 'agent' for the smaller St. Augustine bank of the warehouse owner/landlord. Please e-mail me the total figure(s) on the equipment repairs. I will see about getting that money to you ASAP." *E-mail from the Defendant to Karen Confalone dated September 22, 2008.*

3.  "The day before my quick weekend trip to Moosehead Lake, I stopped in to visit with my banker at Well[s] Fargo to give him an early 'heads up' that I would be starting a new LLC...which will be engaged in the business of selling these aircraft parts to service the needs to the active 'fleet' of Albatross aircraft." *Id.*

4.  "Immediately upon my return from Brazil, I plan on meeting again with Wells Fargo to arrange the FULL funding to put the Albatross parts business in place. Accordingly, I want to be able to then immediately pay Jimmy

---

Defendant would transport the vehicles to the Plaintiff's principal in Maine.

[2]   The deal contemplated the transfer of three vehicles: a red Mercedes dump truck with attached trailer, a Case bulldozer, and a Case front-end loader. The Defendant allegedly delivered only the Case bulldozer and the Case front-end loader.

[Confalone] the FULL balance due on the parts, rather than do it in three equal payments as I had proposed to him earlier. That way, I can immediately begin to sell some parts to get some money flowing IN to the business." *Id.*

5. "Roger and I did NOT let on to Mr. Young that I had entered into an agreement to purchase the parts from Jimmy. I felt that would be a bit presumptious [sic] for me to make any such representations until I had completely settled accounts with Jimmy." *Id.*

6. "In addition to the dozer and loader, at some point soon...I will need to drive the truck and trailer up to Maine, as those items are also included in my transaction with Jimmy Confalone." *E-mail from the Defendant and copying Karen Confalone dated August 4, 2008.*

7. "I got the wire instructions for the warehouse rent (G-111 parts). I will wire the money to them tomorrow (Tuesday)." *E-mail from the Defendant to the Confalones dated September 1, 2008.*

8. "I apologize, the last email was not clear evidently. I'm not having you pay for the equipment repairs twice. The agreement was: 1. You pay $150,000 ($50,000 of which to be wired to Wachovia by September 1, which is why I started using Karen's credit card for repairs to ski lift equipment), 2. you pay the rent in St. Augustine September 1, which you did, 3. you get the truck and trailer up to the mountain. (The $4150 for transportation was received in Wachovia, by the way)  If you will wire $26,000 until you get back that would cover the amount that I've expended and $24,000 on October 1 and then take care of the rest as you stated in your email." *E-mail from Karen Confalone (on behalf of Jim Confalone) dated September 22, 2008.*

9. "Today I deposited a CASHIER'S CHECK for $10,000 directly into your Wachovia account. I hand delivered it myself to a Wachovia branch near my office (down the street from my Wells Fargo branch). . . .  I am getting another $15,000 into your account tomorrow. I had to do a transfer from an investment account outside of Wells Fargo. Therefore, today, I didn't actually have those funds in my Wells Fargo account to make a full $25,000 deposit today. Additionally, I have made arrangements for a short-term loan from my Vanguard 401K account to get some more money to you by Tuesday or Wednesday of next week." *E-mail from the Defendant to the Confalones dated October 2, 2008.*

10. "During my brief stopover in Dallas, I did not have time to make the necessary arrangements to send the first (of three) installments to Jim

(probably into your account). . . . I also realize that another rental payment will be due to the folks in Saint Augustine at the first of the month." *E-mail from the Defendant to Karen Confalone dated September 19, 2008*.

### B. The Motion to Dismiss and Related Briefing

The Defendant raises four grounds for dismissal of the complaint: (1) lack of standing, (2) lack of indispensable parties, (3) the statute of frauds, and (4) failure to adequately plead the count for declaratory relief.

The Defendant alleges that the Plaintiff lacks standing because the named plaintiff is U.S. Distributors, Inc., a corporation that had "nothing whatsoever to do with the alleged 'contract,'" when the plaintiffs should have been the individuals who dealt with the Defendant--James Confalone and Karen Confalone. In support of this argument, the Defendant indicates that none of the e-mails attached to the complaint refer to U.S. Distributors, Inc. Instead, the e-mails come from Karen Confalone's personal e-mail address, and the e-mails are signed by the Confalones as individuals, and not on behalf of a corporation. In addition, the Defendant states that he made payments to Karen Confalone's personal bank account.

The Defendant's argument regarding lack of standing dovetails with his argument regarding lack of indispensable parties. Specifically, the Defendant argues that because his contract was with the Confalones, the Confalones must be joined as indispensable parties. The Defendant also warns that if the Confalones are not joined as parties, there will be a risk of duplicative litigation.

In its response to the Defendant's lack of standing and failure to join arguments, the Plaintiff argues that the Confalones do not have an ownership interest in the aircraft parts and were acting as the corporation's agent when they sent the e-mails attached to the complaint.

The Defendant argues that the complaint should be dismissed under Florida's statute of frauds because there is no written agreement and the transaction concerns the sale of personal property exceeding $5,000 in value and the conveyance of an interest in land. The Defendant also argues that the parties' agreement is vague and indefinite in that it does not identify the specific aircraft parts that the Plaintiff offered to sell to the Defendant and does not specify the term of the lease.

The Plaintiff states that this Court should not consider the Defendant's statute of frauds argument at this stage, because the Defendant should raise it as an affirmative defense. Nevertheless, the Plaintiff argues that the e-mails attached to the complaint are sufficient to satisfy the statute of frauds. Further, the Plaintiff argues that the action is not barred by the statute of frauds because the parties partially performed their obligations under the contract. Finally, the Plaintiff argues that the Defendant has not shown that the parties' obligations could not be performed within a year.

The Defendant also seeks dismissal of the declaratory relief claim because the Plaintiff inadvertently omitted a zero from the citation to the Florida statute regarding declaratory relief. The Defendant acknowledges, however, that the Defendant probably seeks declaratory relief under Fla. Stat. § 86.011.

## II. Standard of Review

In reviewing a motion to dismiss, all well-pled facts in the complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Because attachments to the complaint are "a part of the pleading for all purposes," a court may consider the content of the attachments in passing on a motion to dismiss. Fed. R. Civ. P. 10(c). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are generally not necessary; the statement need only "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). In this regard, however, a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *See, e.g.*, *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. Analysis

### A. Lack of Standing and Failure to Join Indispensable Parties

Whether the Plaintiff is the real party in interest is a question of fact and, therefore, a motion to dismiss is not the appropriate vehicle for determining whether the real party in interest is

5

prosecuting the action. *Wyant v. Crittenden*, 113 F.2d 170, 173 (D.C. Cir. 1940) (holding that a motion to dismiss is not an appropriate vehicle for determining whether the real party in interest has brought a claim because "[w]hether his ownership of the claim was derived in one way or the other was a matter more largely of proof than of pleading"); *Morris v. Bischoff*, No. 96-1384-Civ-T-17A, 1997 WL 128114, at *3 (M.D. Fla. Mar. 4, 1997) ("Whether a party is a real party in interest is a question of fact.").

As noted above, the Defendant argues that the complaint is subject to dismissal because the Defendant actually contracted with the Confalones and not with the Plaintiff.

But in the complaint, the Plaintiff alleges, for example, that "[a]t all material times hereto Plaintiff and Defendant had entered into a contract for the purchase and sale of certain aircraft parts, more specifically described [in the exhibits]." Compl. at ¶ 4. At this stage, the Court must accept this allegation as true. Accepting the allegation as true, the Plaintiff has adequately alleged facts to support that it is the real party in interest to the transaction in question. Accordingly, the Court must deny the Defendant's motion to dismiss the complaint for lack of standing and failure to join all indispensable parties.

If, during the discovery process, the Defendant is able to develop factual support for his argument that the Confalones are the real parties in interest and, therefore, must be joined in this action, the Defendant may bring an appropriate motion under Rules 12, 21, or 56 of the Federal Rules of Civil Procedure. [3]

### B. Statute of Frauds

In Florida, contracts for the sale of goods that cost $500 or more are "not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or

---

[3] The Plaintiff correctly argues that, under Florida law, property can only be sold by its owner, agents may act for undisclosed principals, agents necessarily represent corporations because corporations are unable to speak for themselves, and officers and shareholders of a corporation may not directly sue for a loss that is sustained by the corporation. Accordingly, if the Defendant decides to pursue his argument that the Confalones are the real party in interest, the Defendant would have to obtain evidence—for example, the deposition testimony of either of the Confalones—that the Confalones have a personal stake (as opposed to a stake by virtue of their ownership interest in the Plaintiff) in the outcome of the litigation. In other words, the Defendant would have to show that the Confalones own the aircraft parts, vehicles, and real property at issue.

her authorized agent or broker." Fla. Stat. § 672.201(1).[4] Florida law also requires a "writing signed by the party to be charged" for leases lasting longer than one year or agreements that cannot be performed within one year. Fla. Stat. § 725.01.

The purpose of the statute of frauds is to "intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos." *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777, 779 (Fla. 1966). Courts may aggregate several writings (at least one of which is signed by the party to be charged) to make out the terms of the whole contract. *Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 3d DCA 1999). Florida courts have not prescribed a specific form for writings and, in this vein, courts have accepted "settlement sheets," statements in wills, and telegrams. *Id.* ("To satisfy the statute, a note or memorandum may take almost any possible form."). To the extent there is an ambiguity with the terms of the contract, a court may consider parol evidence. *Id.* at 172.

The Court finds that the e-mails, several of which are signed by the Defendant and the Plaintiff's alleged agents, attached to the complaint meet the writing requirement of the statute of frauds. As noted above, Florida courts are flexible as to what kinds of documents satisfy the writing requirement, and Florida law provides that electronic signatures "may be used to sign a writing and shall have the same force and effect as a written signature." Fla. Stat. § 668.004; *see also* Fla. Stat. § 668.003(4) ("'Electronic signature' means any letters, characters or symbols manifested by electronic or similar means, executed or adopted by a party with an intent to authenticate a writing. A writing is electronically signed if an electronic signature is logically associated with such writing.").

As the excerpts from the e-mails set forth in Part I.A of this Order demonstrate, the parties reached an agreement as to the sale of aircraft parts, the exchange and transportation of certain vehicles, and the lease of a storage facility. The e-mails also set forth the materials terms of the parties' agreement. Specifically, the e-mails identify the items to be sold (Albatross parts and certain vehicles) and their cost, the rent to be paid on the storage unit, and the form of payment.

---

[4] Notably, despite the Defendant's argument that the Court should dismiss the Plaintiff's claim for declaratory judgment because of a citation error (addressed below in Part C of this Order), the Defendant's motion to dismiss cites to a section of the Florida Statutes that the Florida Legislature repealed effective January 1, 2008. Fla. Stat. § 672.206.

In this case, there is no concern that the Plaintiff's action is based on "loose verbal statements or mere innuendos." In fact, the documents attached to the complaint supply evidence that the Defendant has made some of the payments due under the parties' agreement. This partial performance of the Defendant's obligations underscores the fact that he had an agreement with the Plaintiff or the Plaintiff's representatives. Under slightly different circumstances, the Defendant undoubtedly would have brought an action against the Plaintiff if his $50,000 payment to the Plaintiff resulted in the transfer of no property and if his lease payment did not confer upon him the right to use the storage facility.

### C. Citation Error in Count Seeking Declaratory Judgment

To state a claim for a declaratory judgment, a Plaintiff must allege facts supporting that (1) there is a bona fide, actual, present practical need for the declaration; (2) the declaration concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts; (3) some immunity, power, privilege, or right of the complaining party is dependent upon the facts or the law applicable to the facts; (4) there is some person or persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law; and (5) the antagonistic and adverse interests are all properly represented before the court and the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. *City of Hollywood v. Petrosino*, 864 So. 2d 1175, 1177 (Fla. 4th DCA 2004). Florida law does not require a correct citation to the statute that grants courts the jurisdiction to issue declaratory judgments.

As the Defendant acknowledges in his motion to dismiss (and the Plaintiff confesses in his response to the motion to dismiss), the Plaintiff presumably seeks a declaratory judgment under Fla. Stat. § 86.011. The Plaintiff adequately placed the Defendant on notice that the Plaintiff sought a declaratory judgment as required by Rule 8 of the Federal Rules of Civil Procedure.

In short, the citation error in question is not an adequate ground to dismiss the complaint. [5]

---

[5] The Court doubts that a citation error, by itself, is ever sufficient grounds to dismiss a claim for relief. Even in the context of federal criminal law, where liberty interests are at stake, and where the Federal Rules of Criminal Procedure specify that an indictment "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated," courts and the Rules forgive citation errors, "[u]nless the defendant was misled and thereby prejudiced." Fed. R. Crim. P. 7(c)(1), (3); *United States v. Clements*, 588 F.2d

**IV.	Conclusion**

For all of the foregoing reasons, the Defendant's motion to dismiss is denied. The Defendant shall answer the complaint by **Tuesday, October 27, 2009**.

DONE and ORDERED in Chambers, Miami, Florida, October 13, 2009.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All counsel of record

---

1030, 1035 (5th Cir. 1979) ("Both the rules and the cases provide that a citation error in an indictment is not grounds for dismissal or reversal.").